Good morning, Your Honors. Aníbar Sánchez on behalf of Petitioner Jamal El-Abed. The BIA denied Mr. El-Abed's motion to reopen, a motion which was based on ineffective assistance of counsel of his two prior attorneys. Because the motion was filed beyond the 90-day statutory deadline for filing such motions, the petitioner requested the BIA to equitably toll the deadline of the motion to reopen as a result of ineffective assistance of counsel. The BIA declined to do so. In declining to grant the motion to reopen, the BIA found that the petitioner was not prejudiced by his counsel's representation as to whether or not he was inadmissible as a result of a conviction related to a controlled substance. The BIA found that that issue was in the posit because the BIA had additional grounds to find him inadmissible, meaning that he was an illicit trafficker of a controlled substance. With respect to his asylum, withholding of removal, and conviction against torture claims, the BIA found that there was no prejudice or diligence in raising that claim. The BIA, in making that finding, stated that the petitioner could not explain what he had been doing over the past five years since he was previously before the Board, notwithstanding the fact that a petition for review had been pending in his case during that time frame. Furthermore, the Board stated that they did not find prejudice because in the underlying immigration proceedings, his counsel, one of the counsels that he claimed had effectively represented him, had withdrawn his asylum claim and he could not disavow knowledge of that action. Let's focus on that, if we could. You beat me to the punch. Go right ahead. Because on the trafficking point, it's in the briefs and I understand it, but I want to focus on your second claim. And your claim is that counsel before the IJ was ineffective because he waived his asylum, withholding, and CAT claims. And he did it with your client standing there. Twice. Right? Yes. So your client knew at the time that those claims had been waived. So to be clear... So tell me what his ineffective assistance... yeah, go ahead. If I might. Yeah. I'm going to give you every chance to respond, but I have two entries on my timeline. One is June of 2002, where your client's lawyer acknowledged withdrawing the asylum claim and at AR 468, 469, it looks to me like your client was present. And then in February of 2003, counsel, at record 677, I'm not sure which of these Judge Hurwitz is referring to, but I find another troubling entry, which says the attorney was back at a hearing in front of the IJ. He advised... he stated that he'd advised Mr. El Abed that filing an asylum application would be frivolous and also stated that Mr. El Abed had no fear of returning to Kuwait or Jordan and that your client was present. So what am I missing? First, Your Honor, on that second date, the next nine pages of that transcript involve an exchange between the judge, the petitioner's counsel, and the government attorney discussing the possibility of an asylum claim being brought before the court. Issues were raised by his counsel at the time, stating, Your Honor, I'm not sure whether or not we're going to raise this claim but I think he could have problems because of the Iraqi war issue. Presumably referring to the fact that at that or prior to or while he was in the United States, Kuwait forcibly expelled 400,000 Palestinians from its borders. Well, let's go back. There may be merit to his argument that he has an asylum claim. I'm trying to figure out when one stands up before an IJ twice and has counsel say, we're giving up on our asylum claims. Shouldn't, in effect, the statute of limitations to think that your counsel was ineffective start to run at that point as opposed to only later when everything else fails? I mean, that's really the issue in this case. Sure. Well, two issues, Your Honor. When your counsel, after the second time says, I believe I have withdrawn an asylum, goes on to discuss your actual asylum claim with the immigration judge and the immigration judge then encourages your counsel to discuss asylum with you and explains to your counsel what they would like to see, what the judge would like to see on an asylum claim. That's my question. At that point, doesn't Mr. El Abad have some notice that he might be not wise to give up his asylum claim? The judge says, talk a little bit about it. I'm not so sure. There's plenty. You know, you might be able to make the claim and then it's withdrawn. At that point when it's withdrawn, doesn't he know or should have known that there might be some problem with withdrawing it? That is what he stated in his declaration, Your Honor, in support of his motion to reopen, that he explained to his then counsel that he was afraid to go back. He did not authorize his counsel not to move forward with an asylum or to withdraw his asylum. And he just didn't understand what was going on. See, this is the point that troubles me. I appreciate that you raised the next nine pages of the transcript because those are the pages that I find almost as troubling. A lot of times in courtrooms we use a lot of legal jargon, and I can imagine a layperson, you know, an asylum, deportation, withholding. What does that mean? I can well appreciate that that might go right by, particularly in such a stressful situation, appearing in court. But this was a protracted conversation, and it included an admonition. You should discuss this with your client. Your client was present, and your client is a well-educated person. So at some point he certainly has an obligation. He's on notice. And this is critical, of course, because the basis for this most recent motion to reopen, essentially, I think, is ineffective assistance of counsel because my lawyer wasn't a good communicator. So I have a real problem with this, and that's why I want to make sure you have every opportunity to respond. Sure. So the issues relating to his asylum and withholding and Convention Against Torture, Your Honor, those are not intuitive issues that a layperson would understand. How exactly do I qualify for asylum, withholding, or CAT under the circumstances where I haven't been to my home country in years? But given the fact that, one, he was of Palestinian descent, facing deportation to two countries that at that time had engaged in, one, a mass exile of Palestinians, and two, was in the process of denaturalizing Palestinians, that would lead someone to reasonably believe, or an attorney, not a layperson, that perhaps this individual may face future persecution. But we're assuming, I mean, I think you're missing the import of the question. Let's assume that your client got awful representation at that hearing, that counsel fell well below the standard of care in dropping these claims. The question is one of equitable tolling, right? The question is when your client knew or should have known that he'd gotten bad legal advice so as to move to reopen. And what we're having some difficulty with is whether it should have been apparent at the time, knowing what your client knew, that dropping these claims, particularly after the judge said you better talk to your client first, was bad legal strategy. Well, once the decision came out after the final hearing related to the drug trafficking charges, he went to a different attorney, and he asked a different attorney, help me. So under those circumstances, if another attorney receives transcripts and reads the transcripts and says to himself, okay, there seems to be perhaps a problem here relating to the underlying relief that you sought, putting your eggs solely in the basket of adjustment of status, I'm going to tell you about it, my client, and we're going to do something about it. The second attorney didn't tell him anything about it. So forgive me, I'm just going down my timeline. When did he hire the second attorney? I believe it was before. He rehired his trial attorney in 2006. He hired a second attorney, then rehired his trial attorney, right? Right. For the Ninth Circuit. Yes. The one that he thinks gave him terrible advice. Right. Right. So I'm trying to figure out, it looks like he waited four years, didn't he? To hire the second attorney? Well, it was May of 2006 when the BIA dismissed his first appeal. Correct? And the attorney who filed that brief was Bob Platt, who is a different attorney than Kaveh Ardalan, who represented him before the immigration judge. Okay, so fine. Completely different. But my question is, we have these two hearings that we just mentioned, June of 2002 and February of 2003, where your client was represented. And then you've explained that he had quite some time where he was pursuing a different theory, and then he lost. And so how long a period of time did that take before he then hired another lawyer? So once his adjustment status was denied in front of the immigration judge, then he hired a new attorney. To do the appeal. To do the appeal. Okay. And then he does the appeal and loses the appeal, and then rehires his original attorney to file a petition for review. Probably not the smartest decision. Okay, no, but I'm not. It was 2006, right? I'm just trying to get the timing. The BIA appeal was denied in 2006. All right, thank you. Did I interrupt you? No, no, you were asking the same question I was, but in a better way. And then he hires his original attorney to pursue the petition for review. Right? Yes. And that gets turned down. Yes. Because of a lack of compliance with LAZADA. Right. Well, there was a motion to reopen filed by his original attorney, but that was focused in on the evidence taken into account by the judge in finding that he was inadmissible was not sufficient to find that he was inadmissible. Okay. Right. But in 2000, when this court turns down the petition for review, when is that? September 27, 2010. Okay, so now we are how many years after the original denial by the IJ? We are now... Eight. Six? Oh, by the IJ, forgive me. Six. Six. Six years. Six. And in that interim time, no claim of ineffective assistance of counsel has been raised, has it? No, it hasn't, Your Honor. Okay, and now we get to 2007? Eight? When is the first time ineffective assistance of counsel was raised? 2010. 2010. November of 2010. So my question, you know, now we have that timeline straight and sort of a... And I know we have your client's affidavit that says he really didn't know he got bad advice until some point along the way. So tell me why he was diligent in those intermediate nine years in pursuing this claim. Because he was always represented by counsel, Your Honor. And the Ninth Circuit has said that when you're represented at counsel, you should have a reasonable expectation that you're being competently represented, that you cannot hold against a respondent that he has not been diligent when he's being represented by counsel. I believe the case of Ita Treburia holds that. I believe the case Rodriguez, I'm trying to remember, Rodriguez-Ladiz, in a footnote on this particular issue, says it's unreasonable for the BIA to suggest that the petitioner was not diligent in filing IAC claims while still being represented by the ineffective counsel. But that was by the ineffective counsel. So I guess your point is that was first BIA appeal counsel the one that was he ineffective? He was. Because? Because the only issue that he raised on appeal was did the judge properly rely on the vacated conviction to find that he was an illicit trafficker of drugs? And I believe that based on Ninth Circuit precedent decision, that was a clearly losing argument. There was no way that you were going to win that argument. And did he have a winning argument that he should have made? I believe he did have several winning arguments. Well, what were they? Because the BIA says if he'd raised the argument about drugs because there was substantial evidence that your client was a trafficker, he would have lost on a slightly different ground. What's interesting, Your Honor, is the BIA never actually reached the issue of whether substantial evidence existed. They only reached the issue, which was briefed, which was did the IJ properly rely on the vacated conviction. And they said, well, the IJ did not actually rely on the vacated conviction. Well, let's assume that we conclude that you would not have prevailed before the BIA, your client would not have prevailed in attacking a trafficking conclusion. So tell me why first counsel was ineffective, given that assumption. First appellate counsel. Okay. So you could have just read the immigration judge's decision, and she at one point makes it very clear the basis of why she finds the petitioner to be a drug trafficker. No, but I'm asking you to assume that that's not a winning argument. But did he have a winning argument that he could have made? He did. Because the immigration judge in her decision on page 17, which I believe is – sorry, Your Honor, I'm just trying to find the slide. Here it is. It's at 126 of the certified administrative record. The judge says, and I quote, because, however minor his involvement, he nevertheless has pled to a crime relating to a controlled substance and has also been involved in a drug trafficking offense. Therefore, the attorney general has reason to believe he is a drug trafficker, meaning both reasons. He pled to a crime involving a controlled substance and he's been involved in a drug trafficking offense. Now, that goes to the issue of whether or not his conviction was a controlled substance conviction. And as I've noted in my brief, it just was not, because pseudoephedrine is not a controlled substance under the Controlled Substance Act. So if the judge specifically relied on that controlled substance conviction coupled with his activity to find that he was a drug trafficker, he was just wrong. We understand. And you notice the numbers are now going back up. Yes. So you're out of time. Okay. And we appreciate your argument. We'll give you one minute for rebuttal so you can be planning that. We'll hear from opposing counsel, please. Good morning, Your Honor. May it please the Court. Eric Anderson representing the attorney general. The board did not abuse its discretion and the petition for review should be denied because Mr. Elabed had actual knowledge of this asylum application being withdrawn. Well, sure he did. But does he have actual knowledge? He's filed a declaration that says, look, my lawyer told me at the time I had no chance of success, and so I trusted him. My other lawyers didn't tell me that I had a chance. I kept hiring lawyers, sometimes badly, twice badly, I guess, before he hit on good counsel. And I couldn't, nobody helped me. And it wasn't until very much later when I got to my third lawyer that my lawyer said, you've got a claim here. So why isn't there equitable tolling during that time period for raising the claim of ineffective assistance? He surely knew asylum claims were being waived, but he says he was told by his lawyer that he had no shot of getting asylum. Well, sure, Your Honor. But when the IJ ordered him removed in December of 2004, he has knowledge then of the act, the withdrawal, and of the consequence that. But he's claiming, he's saying, my lawyer told me, you've got no shot. Don't waste your time on this. Devote all your energy towards adjustment of status. And that was, he says now, terrible advice because he says I've got a pretty good claim. Why should he know that he got bad legal advice at that time? Because that's the question for equitable tolling. Well, Your Honor, I would just, he knows he had bad legal advice because he saw this, and so he fires Ardalan. We know he knew he had bad legal advice because he fired Ardalan and hired Bob Platt to handle the appeal to the board. Then in May of 2006, he has actual knowledge that he was ordered removed again. So again, we have the underlying act, the withdrawal, the consequence, the order being removed. And then he returns to Ardalan. And all of this court's case is talking about a series of attorneys, and if you maintain counsel throughout them, and you rely on their advice, not one of them says that you can go to one that you knew was ineffective, that you knew provided the ineffective assistance, and use that to support your diligence. Well, but let's run through what happened here because he, having dropped his asylum claims, his claims for protection, if you will, asylum withholding cat, the only possibility on appeal is this notion that I'm not a drug trafficker, therefore I'm not removable, right? Well, yes, I mean, Platt could have filed the motion to reopen directly. I understand. I understand, but I want to take the facts in the light most favorable to Mr. Elabat. Sure. He says at the time, well, I do still have to appeal because I don't think I'm a drug trafficker. And he hires a new lawyer to appeal because he thinks the guy who argued to the IJ that he wasn't a drug trafficker didn't do a particularly good job. And so he loses that before the BIA. He goes back and sillily hires the first lawyer again, but it's only, on the petition for review at this point, it's only on this issue of drug trafficking because no other issue has been preserved. Is that right? That's my understanding. Is that right? Am I correct so far? For the petition for review, yes. Now, Ardalan did file a motion to reopen alleging ineffective assistance against Platt. So he's pursuing two. Right. But what he's arguing is that Platt didn't argue this drug trafficking issue correctly to the BIA. Oh, he's arguing that Platt should have argued. No. He puts Ardalan in the position of saying Platt was ineffective for failing to discover Ardalan's ineffective assistance of counsel. But his ineffective assistance of counsel. The ineffective assistance he's alleging doesn't have to do with waiving the asylum claim, does it? Not in the motion to reopen. Okay. So we've not yet, nobody has yet brought before a tribunal this notion that initial counsel didn't, fell below the standard by telling him to give up his protection claims. Until November of 2010. Is that right? Until November of 2010. That's the first time that's raised? That's right. Okay. And Mr. El Abad says, look, I didn't know about that. I thought, I thought I got really bad counsel on a variety of, on the merits issues in the case. And, but I didn't realize until later, may not be believable, but that's what his affidavit says, or his declaration is. I didn't realize until I finally ran across really good counsel that I had an argument that these claims never should have been given up. And so my question is, assuming that what he says in his declaration is true, which I think the BIA has to accept in the absence of something contrary, why doesn't that constitute equitable tolling? They might find on hearing that everything in the declaration is not true. But on the record in front of us, why doesn't that constitute equitable tolling? On the particular, I mean, why doesn't it support diligence? Yeah, diligence. And therefore, therefore mean that the motion to reopen was not, was not out of time. Because by returning to Ardalan, by knowing that Ardalan had withdrawn this claim, that Ardalan went further and, you know, after nine pages of discussion, eventually did not put forward any evidence on the asylum claim. And by voluntarily returning to him, that you're not diligently pursuing your rights. Well, he was returning to him to appeal the BIA's dismissal of his, BIA's affirmance of the removal order. He was returning to him to avoid being removed from the United States. Is there a different result if he hired a different lawyer? At the time, well, yes. I think it would be a very different case. I mean, obviously we're in hypotheticals now. But this court, as I said, does have cases where if you go from lawyer one to two to three to four, and if you rely on all of them, but then at the end of the day you can show that they were all ineffective assistance, all ineffective, then maybe you count 90 days from the end. That's what we're asking. But we're going from one to two back to one, and you can't, that's not diligently pursuing your right to seek asylum by going to the guy who said we withdraw asylum. Can I ask you, have we ever said that? That that's per se not diligent? Well, I don't think there's any case saying that, Your Honor. I just, none of the cases about casing involve this situation. I don't remember ever seeing one. That's why I asked the question. And does it make a difference that when he goes back to one, it's for a very specific task. It's to file a petition for review from the BIA's, or is he going back to them, Jesse? I guess what you're assuming, and this may be correct, is that when he goes back to number one, he's going back for advice in general about how to stay in the United States as opposed to advice, as opposed to filing a petition for review to this court. Yeah, I'm not sure of the details of the affidavit, but I'm sure it doesn't say anything like, I went to Ardalan and told him that he needs to revive my asylum claim that he had voluntarily withdrawn. No, no, it doesn't say that. My question is if you hire Lawyer One, because you're relying on the rehiring of Lawyer One in this, it's breaking the chain, if you will. But if you rehire him for a limited purpose, which is to file a petition for review, does it break the chain under those circumstances? It does, because if you're only hiring him to pursue a petition for review, this court has well-established law that a petition for review doesn't toll the period to seek reopening. You can and must pursue both avenues, the motion to reopen within 90 days of the board's order and the petition for review at this court at the same time. Again, I think we're missing each other, and I really want you to help me on this. His claim is, look, I didn't know I had an ineffective assistance of counsel claim for removing the asylum claim. My lawyers told me it was a terrible claim. Nobody, the second lawyer didn't tell me. I went back to the first lawyer for a limited task. I didn't go back to him to ask whether it was a good claim or a bad claim. I went back to him to fight the trafficking issue in the Ninth Circuit, and it wasn't until I finally came to my fourth lawyer that I could have been reasonably expected to know that I had a good claim. How do we, and let's assume all that to be true for a moment, because that's essentially what his declaration says. It's not quite that specific, but it's essentially what it says. The BIA is required to take his declaration as true, except if there's something in the record that contradicts it. So tell me what in the record contradicts that version of events. Well. It was the dumbest move in the world to go hire the first lawyer again, but. All I was, all I, I don't need to establish the wisdom. All I need to show is it's not diligently pursuing your asylum claim. Can I just back up before you go farther in the chronology? Just to follow up on this declaration and the motion to reopen, was there a finding that this declaration was inherently unbelievable? No. So is it your position per Judge Hurwitz's question, if I could just piggyback, that this is the BIA was required to accept these facts as truth? There, I mean, this court generally requires statements in the motion to reopen that are not inherently unbelievable to be accepted as true. The board didn't find any of them. You say generally. I mean, that's our case law, right? There is an exception. Counsel, an important point. You said generally, and I'm trying to, if you know something, I don't know, I want to hear about it. This is LIMSICO, Your Honor. L-I-M-S-I-C-O. And it says generally? It says that if the affidavit makes the statement contrary to something that's been previously adjudicated. Right. And that's why I asked the question. But I'm asking a different one. And my question is, was there a finding that this declaration was inherently unbelievable? And I think the answer is no. I agree. Okay. Now could you answer Judge Hurwitz's question? Because they are different. You see, my question is, assuming that this declaration is true, Mr. El Abad says, look, I kept going to people and nobody told me I got ineffective assistance until I hit on current counsel. Why doesn't that fit within our case law that says a series of counsel told the time in which to file a motion to reopen? I would say, I guess, I think Avagian is the most recent case in which this court split up the claims that were being pursued and said, were you diligent with this claim? Were you diligent with this claim? Were you diligent with that claim? And so that's why I think it's underlying the board's decision here to discuss the adjustment versus asylum separately. Right. And on adjustment, I understand. On trafficking, I understand. But on the claim of ineffective assistance for dropping the protection, applications for protection, that's the one I'm focusing on. When should Mr. El Abad have known that he got bad advice? He knew on May 4th, 2006 or whenever the board decision reached him thereafter, which there's no claim it was an extended period. It was shortly thereafter. He knew that El Abad had fraudulently, in fact, withdrawn the asylum application and fraudulently stated that Mr. El Abad had no fear because of the frivolous warnings. And that the result of all this was that he was ordered removed. The knowledge of these two things, that's all that you need to start your 90 days for diligently pursuing relief. And going back to the person who defrauded you is not diligently pursuing your claim. So you think his time to file a motion to reopen began on the order of removal? Yes, Your Honor. That he should have known at that point that the advice to withdraw his asylum claims was ineffective? That it was fraudulent more than ineffective. Why was it fraudulent? It was a lie, according to him. Oh, because he said he didn't have any fear of protection. If you accept the declaration, it's true. Yeah. No, I got that part. Okay. All right. Thank you, counsel. I'm sorry, we interrupted your thoughts. So why don't you tell us what you wanted to tell us. I mean, I think that the timeline is clear on the asylum. The basis of the board's finding no diligence is here. The court has said it's clear. I mean, unless you want to hear about the adjustment application, but just that there's no showing that reasonable counsel could have shown the AG there was no reason to believe that someone who transported hundreds of thousands of tablets of Sudafedrine and all the other facts in the record did not give the Attorney General a reason to believe he was engaged in trafficking. Because these particular drugs themselves don't have to be drug trafficking. Because, that's right, 212-A2C covers both controlled substances and listed chemicals. And Sudafedrine is a listed chemical. It's also a precursor of amphetamine. So it might be a controlled substance under that. But we don't need to get to that. He either directly engaged in trafficking Sudafedrine or knowingly participated and aided and abetted the trafficking of meth. And this is a statute that only requires that the Attorney General have reason to believe or reason to know. That's correct, Your Honor. And unless there are any other questions, I'd be honored. Thank you, counsel. Mr. Brank, could we put one more minute on the clock, please? You're actually out of time, but please come right on up. Just going to the diligence, Your Honors. Again, the Ninth Circuit precedent is very clear. If you diligently hire attorneys to continue to seek relief for you, that should not be counted against you in terms of the precedent. Can you respond to a point that I hadn't focused on before and counsel raised? Counsel says Mr. Elibod knew that his attorney lied to the IJ in the proceedings when he said he had no fear of persecution. And that at the time... The declaration says something contrary now. Yeah. The declaration says, at the time I had a fear, but he led his attorney to tell the judge he had no fear. Does that start the period running to suspect that your attorney has done something wrong? No, Your Honor, because he was there when his attorney told the judge, Your Honor, I think that there may be something here. He was there when his attorney said, and this is what my colleagues are trying to get you to focus on, I think. He was also there, doesn't take any knowledge of the law, when his attorney said, my client has no fear of returning. Yes. And the IJ says, under those circumstances, maybe withdrawing the claims for protection is not a bad idea, because they all depend in some way or another on fear of being persecuted or tortured or treated badly when you go back to a place. And your client stands there and hears his lawyer lie to the judge. Does that start... Does that provide some knowledge that at that point his lawyer is not providing good service? Your Honor, when your attorney tells, says that to the judge, but then couches that with, but we're looking into it, Your Honor, a reasonable client would not say to himself, my attorney is doing a bad job, for whatever reason he told them, because he was referencing a previous conversation when he said, the last time I spoke to my client on this issue, he said that he had no fear. So at this point, previously, the man was in the United States as an F-1 visa overstay who hadn't been convicted of a crime related to a listed chemical and did not have the U.S. government alleging that you're a drug trafficker and then have the potential of being removed to two countries that maintain the capital punishment for drug traffickers. So under those circumstances, Your Honor, I don't believe that you can read into he was on notice that his attorney saying, previously when I spoke to him, he didn't have any fear, could put him on notice that... Well, but he does, his declaration is pretty clear on this point. He says that wasn't true. I knew that wasn't true at the time. He said I had a fear. I had a reasonable fear based on all these things that you were talking about. Right, but we don't know the conversation that Ardalan was referencing when he told the judge, the last time I spoke to him, that could have been, I mean, he had been representing him for four years at that time. That could have happened in 1999, could have happened in 2000, could have happened in 2001. But your client doesn't say in his declaration, well, I once didn't have a fear, but now I developed one. Your client says that was just a wrong statement. I was scared to death of going back to one of these countries. Well, he executed that declaration in 2010, Your Honor, which was seven years after the events that occurred in court. Whether or not he precisely knew when his non-fear turned into a fear, I mean, he entered the United States in 1995. He wasn't afraid to go back in 1995. There was no reason to. He was in F-1 status. So he didn't always maintain a fear of being returned. Counsel, you're significantly over your time at this point, so I'm going to ask you to wrap it up. If you could just finish your last thought. Okay. So when Ardalan said the last time I spoke to him, we don't know when that was. All we know is once it became clear that he potentially could be found to be a drug trafficker and removed to two countries that maintain capital punishment, and he was a Palestinian and being potentially moved to two countries that discriminated and were denaturalizing Palestinians, at that point it's reasonable to say that he did have a fear. Thank you, counsel. Thank both counsels, please, for your helpful argument.
judges: Burgess, Christen, Hurwitz